IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SATKAR HOSPITALITY INC., <br> SHARAD K. DANI, and HARISH DANI, <br><br> Plaintiffs, <br><br> vs. <br><br> COOK COUNTY BOARD OF REVIEW, <br> LARRY ROGERS, JR., JOSEPH <br> BERRIOS, BRENDAN F. HOULIHAN, <br> SCOTT M. GUETZOW, JOHN P. <br> SULLIVAN, THOMAS A. JACONETTY, <br> FOX TELEVISION STATIONS, INC., <br> FOX CHICAGO NEWS, NEWS CORP., <br> ILLINOIS REVIEW, FRAN EATON, <br> DENNIS G. LACOMB, DANE PLACKO, <br> MARSHA BARTEL, CAROL FOWLER, <br> PATRICK MULLEN, and FOX <br> TELEVISION HOLDINGS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 10 C 6682 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Satkar Hospitality, Inc. and its two principals have sued the Cook County Board of Review, three individuals who were the commissioners of the Board at the relevant time, the chief deputy commissioner, and two first assistant commissioners (collectively, the Board defendants); the Illinois Review and several affiliates (collectively, the Illinois Review defendants); and the local Fox Television station and several affiliates (collectively, the Fox defendants). The Board of Review considers appeals of real estate valuations made by the Cook County Assessor for property tax

purposes. Plaintiffs claim that the Board defendants revoked their property tax reduction without providing due process and in violation of other constitutional prohibitions and that the Illinois Review and Fox defendants defamed plaintiffs and placed them in a false light.

All of the defendants have moved to dismiss plaintiffs' first amended complaint. In this decision, the Court considers the Board defendants' and Illinois Review defendants' motions to dismiss. For the reasons stated below, the Court grants the Board defendants' motion in part and denies it in part. The Court denies the Illinois Review defendants' motion.

**Background**

Satkar owns a hotel in Schaumburg. Plaintiffs allege that Satkar appealed its 2007 tax assessment and that the Board lowered the assessment in a way that represented a $40,000 annual tax savings. In 2009, the news media ran reports that Paul Froehlich, a member of the Illinois General Assembly, was "engineering successful Board of Review appeals for his constituents in return for large campaign contributions." Am. Compl. ¶ 27. Plaintiffs allege that the reports accused them of bribing Froehlich in return for his agreement to arrange a successful appeal. *Id.* ¶ 28. This, plaintiffs allege, was a false accusation. *Id.* ¶ 35.

Plaintiffs allege that in response to the media reports, "and for the appearance of clean hands," the Board required them to appear in June 2009 "ostensibly . . . to discuss the assessment appeal." *Id.* ¶ 39. But rather than posing questions about the valuation of the hotel, plaintiffs allege, the Board defendants "asked repeated questions

about the relationship between Plaintiffs and Rep. Froehlich." *Id.* Following the hearing, plaintiffs contend, "the Board arbitrarily rescinded the reduction in property taxes that it itself granted close to one year prior . . . , stating simply, 'we can do anything we want.'" *Id.* ¶ 46. The chief deputy commissioner allegedly attributed the reduction directly to "the relationship between the people involved," i.e., plaintiffs and Froelich. *Id.* ¶ 47.

Plaintiffs allege that they were "arbitrarily selected" due to the fact that they had made contributions to Froehlich's campaigns, "merely for their association with Rep. Froehlich" and contrary to their First Amendment right to contribute to political candidates without fear of retaliation. *Id.* ¶¶ 48-50. Plaintiffs allege that similarly situated property owners who had not contributed to Froehlich were not treated as plaintiffs were. *Id.* ¶ 51. They also allege that the revised assessment that the Board issued following the June 2009 hearing "did not accurately reflect the property's actual value . . . ." *Id.* ¶ 52.

Plaintiffs allege that they have appealed the revised assessment to the Illinois Property Tax Appeal Board (PTAB) but that the "PTAB will not render any decision for an unconscionably long time, if ever" because the Board has "red-flagged" the appeal. *Id.* ¶ 53. They contend that there is a good chance that the appeal will take as long as seven or eight years to resolve and that in the meantime they are deprived of the use of the amounts they have been forced to pay in higher taxes. *Id.* ¶¶ 66-67.

Plaintiffs also allege that the Board erroneously denied their appeal of a later assessment. *Id.* ¶ 54. According to plaintiffs, Larry Rogers, one of the commissioners

3

of the Board, "explained to counsel for Plaintiffs that the denial was as a result of Plaintiffs' relationship with Rep. Froehlich, and not due to the merits of Plaintiffs' appeal and that under no circumstances would the Board grant a reduction of the Plaintiffs' property taxes." *Id.* ¶ 56. Plaintiffs allege that this, too, was in retaliation for their association with Froehlich, contrary to the way the Board treated other similarly situated property owners, and not based on the merits of the assessment. *Id.* ¶ 57-58. Plaintiffs allege that the Board's actions denied them due process because they did not have a real opportunity for a hearing on the merits. *Id.* ¶ 59.

Plaintiffs allege that under Illinois law, a property owner may appeal to the PTAB or to state circuit court (but not both) and that the PTAB lacks authority to review issues of due process and equal protection. *Id.* ¶ 61. They allege that the Board's commissioners "are powerful members of the Cook County Democratic Party and exert political influence over the State judiciary." *Id.* ¶ 68. As a result, plaintiffs allege, they "cannot expect justice in this matter in Circuit Court because there are inherent conflicts of interests between many members of the State judiciary and at least two of the Defendants," including (former) commissioner Berrios, who is identified as chairman of the Cook County Democratic Party, which, plaintiffs allege, "slates all [D]emocratic judicial candidates" in the county, as well as former vice chair of slating for the party. *Id.* ¶¶ 69-70. Plaintiffs contend that "[t]here is a great likelihood that in state court, Plaintiffs would be before a judge who owes his position, in some way, to the political party currently chaired by . . . Berrios." *Id.* ¶ 73. They also allege that (former) commissioner Rogers, "was President of the Cook County Bar Association, which rates

and effectively recommends candidates for judicial office." *Id.* ¶ 75. As a result of these factors, plaintiffs contend, "[t]here is no plain, adequate, and complete state remedy in this matter." *Id.* ¶ 76.

Plaintiffs assert claims under 42 U.S.C. § 1983 against the Board of Review and the individual Board defendants for violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment (Counts 1 and 2) and the First Amendment (Count 3). Plaintiffs assert state law defamation claims against the Illinois Review defendants. Defendants have moved to dismiss these claims on various grounds.

## Discussion

On a motion to dismiss, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

### I. The Board defendants' motion

The Board defendants have moved to dismiss plaintiffs' first amended complaint on the basis of absolute immunity, qualified immunity, and the *Rooker-Feldman* doctrine. The Board defendants also contend that plaintiffs fail to state a claim for violation of their equal protection, due process, and First Amendment rights. Finally, the Board defendants ask this Court to dismiss all claims against the Board on the ground that plaintiffs fail to state claims against any individual Board defendants. The Court addresses each argument in turn.

#### A. Absolute and qualified immunity

A recent Seventh Circuit decision requires the dismissal of the claims against the

5

members of the Board – Berrios, Rogers, and Houlihan – on the basis of absolute immunity. In *Heyde v. Pittenger*, 633 F.3d 512 (7th Cir. 2011), the Seventh Circuit considered claims against the members of the Tazewell County Board of Review, which performs the same function in that county as the Cook County Board of Review. The plaintiff in *Heyde* alleged that the board set his property assessment at a disproportionately high level, in violation of his equal protection rights and in retaliation for his earlier exercise of his right to challenge assessments. *See id.* at 514. The court held that the defendants were entitled to absolute quasi-judicial immunity from suit under section 1983 because the claims arose from their performance of an adjudicative function. *Id.* at 517-19.

The same immunity applies to Guetzow, Sullivan, and Jaconetty, who are deputy and assistant commissioners. The factual predicate for plaintiffs' claims against them is less than crystal clear. Plaintiffs lump them in with the other Board defendants without distinguishing who did what – except for their reference to Guetzow's alleged statement that the Board had acted as it did because of "the relationship between the people involved." Am. Compl. ¶ 47. What is clear, however, is that plaintiffs have sued the non-Board member defendants because of their alleged activities in connection with the setting and conduct of the June 2009 hearing and the ensuing decisions regarding the hotel's assessment.

Even a court clerk is entitled to absolute immunity for non-ministerial actions integral to the adjudicative process. *See, e.g., Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992). Absolute immunity "is designed to free the *judicial process* from the

6

harassment and intimidation associated with litigation." *Burns v. Reed*, 500 U.S. 478, 479 (1991) (emphasis in original). When a court deals with the application of the immunity doctrine to auxiliary judicial personnel, it must bear in mind the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts . . . ." *Kincaid*, 969 F.3d at 601 (internal quotation marks omitted). Because it is clear from the complaint that plaintiffs are suing Guetzow, Sullivan, and Jaconetty for their actions in connection with the quasi-judicial decision making performed by the Board, they are entitled to absolute immunity from suit under section 1983.

This leaves the claims against the Board itself. The Board does not contend that quasi-judicial immunity extends to the Board itself, as opposed to its individual commissioners, deputy commissioners, and assistant commissioners. *See, e.g.,* Mem. in Support of Mot. to Dismiss (dkt. no. 35) at 8 ("Even had plaintiffs properly pled their claims against Berrios and Jaconetty, those claims would be barred by the defense of absolute immunity."); Motion to Cite Add'l Authority (dkt. no. 61) ¶ 2 ("Berrios and Jaconetty have asserted the defense of absolutely [sic] immunity . . . ."). Nor does qualified immunity apply to a judicial body like the Board; the doctrine protects only individual government officials and agents. *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)). The Board is therefore entitled to neither absolute nor qualified immunity from plaintiff's section 1983 claims.

**B.     *Rooker-Feldman* doctrine**

The Board argues that plaintiffs' claims are barred by the so-called *Rooker-Feldman* doctrine, which bars federal "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 294 (2005). The doctrine stems from the fact that Congress has authorized only the Supreme Court to review state court judgments. As a result, lower federal courts lack jurisdiction to nullify the judgment of a state court. *See id.* at 284-85.[1]

The first question is whether the *Rooker-Feldman* doctrine even applies in view of the fact that plaintiffs litigated and lost not before a state court but before the Cook County Board of Review, a state administrative agency. The Seventh Circuit has repeatedly held that the doctrine "presents no jurisdictional obstacle to judicial review of [state] executive action, including decisions made by state administrative agencies." *See Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002)); *see also Hemmer v. Indiana State Bd. of Animal Health*, 532 F.3d 610, 614 (7th Cir. 2008).

In support of a contrary proposition, defendants note that "*Feldman* itself involved a federal lawsuit seeking review of a decision made by a Committee of the

---

[1] One fairly obvious exception to this concerns habeas corpus proceedings under 28 U.S.C. § 2254. Plaintiffs, however, have identified no exception that applies in the present context.

District of Columbia Bar that denied one of the petitioners in that case admission to practice law." Bd. of Review Defs.' Reply at 16. That contention is a bit of a stretch. It is true that the *Feldman* case, entitled *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), stemmed from a bar committee's decision to deny the plaintiff admission to the bar. But before the plaintiff filed suit in federal court, he had challenged the bar committee's decision in the local District of Columbia courts and had lost. The issue the Supreme Court considered was not whether the plaintiff could challenge the bar committee's decision in federal court; rather the Court considered "what authority the United States District Court . . . and the United States Court of Appeals . . . have to review *decisions of the District of Columbia Court of Appeals* in bar admission matters." *Id.* at 463 (emphasis added). The Court considered whether the local court's ruling was a judicial proceeding as opposed to an administrative or ministerial proceeding, but the premise of that assessment was the rule that a district court is "without authority to review final determinations of [a state court] in judicial proceedings." *Id.* at 476.

The other cases that defendants cite for the proposition that *Rooker-Feldman* applies to the Board's decision likewise do not support the weight that defendants seek to place on them. In *Edwards v. Illinois Bd. of Admissions to the Bar*, 261 F.3d 723 (7th Cir. 2001), much as in *Feldman*, the Board of Admissions' decision had been reviewed and upheld by a state court. Thus although the plaintiff's complaint concerned matters that had occurred before the Board of Admissions, she was attacking the judgment of a state court, not simply the judgment of the Board. And in *Buckley v. Illinois Judicial*

9

*Inquiry Board*, 997 F.2d 224 (7th Cir. 1993), which defendants also cite, "[t]he judgment of the Illinois Courts Commission . . . was the judgment of the highest court of the State of Illinois because it could not be reviewed by any other Illinois court, so only the U.S. Supreme Court could review it further . . . ." *Id.* at 227.

Defendants argue that, under state law, the Board of Review is a "quasi-judicial tribunal" rather than an administrative agency. Reply in Support of Mot. to Dismiss at 17. The authorities they cite, however, are distinguishable. First, in *Parker v. Kirkland*, 298 Ill. App. 340, 18 N.E.2d 709 (1939), an Illinois appellate court held that a privilege rule applicable to statements by counsel in judicial proceedings and "hearings before bodies whose duties are quasi judicial, boards, or commissions" applied to statements made in administrative proceedings before the Board of Appeals. *Id.* at 713. The court reasoned that, "[t]hough a branch of the executive department of the government, the Board of Appeals, which succeeded the Board of Review, nevertheless exercises quasi judicial powers." *Id.* at 713. The court's recognition that the Board exercises quasi-judicial powers does not alter its status as an administrative agency of the executive branch.

Second, in *Goodfriend v. Bd. of Appeals of Cook County*, 18 Ill. App. 3d 412, 305 N.E.2d 404 (1973), an Illinois appellate court held that the Board of Review was an "inferior tribunal" for purposes of a rule permitting state circuit courts "to issue common law writs of certiorari addressed to all inferior tribunals whenever it is shown either that they have exceeded their jurisdiction or have proceeded illegally, and no direct appeal or other mode of direct review of their proceedings is provided." *Id.* at 418. The court

stated that the Board exercised a judicial "power" when it decided the property rights of others. *Id.* at 418. The court made it clear, however, that "[t]axation of property is a function that is legislative, rather than judicial" and it characterized the Board's decisions as "administrative." *Id.* As in *Parker*, the Board's exercise of judicial powers does not make it part of the judicial branch of the state government.

Nor does this Court's earlier determination that the individual Board defendants are entitled to absolute quasi-judicial immunity dictate that the *Rooker-Feldman* doctrine applies in this case. In the immunity context, the Court applies "a functional approach" and considers whether the claims arise from an official's performance of an adjudicative, as opposed to ministerial or administrative, function. *Heyde*, 633 F.3d at 517. In contrast, in the *Rooker-Feldman* context, the Court considers whether a plaintiff was a "state court loser" or instead merely lost in "state administrative agency proceedings." *Hemmer*, 532 F.3d at 614.

Contrary to defendants' assertions, the *Rooker-Feldman* doctrine does not come into play merely because the Board of Review's decision was subject to challenge and review in state court. Indeed, the Seventh Circuit held otherwise in *Hemmer*. In that case, a plaintiff obtained an adverse state administrative agency decision and then failed to get state court review due to his own error. *Hemmer*, 532 F.3d at 614. Despite the plaintiff's failure to exhaust available state court remedies, the court concluded that the plaintiff was not a "state-court loser" for purposes of the *Rooker-Feldman* doctrine because "the only relevant prior history was a loss in state agency proceedings." *Id.* The plaintiffs in this case are similarly not "state-court losers" merely because they lost

11

their appeal before the Board of Review. The Court therefore concludes that the Board's decision to reassess plaintiffs' property is not a state court judgment that subjects it to *Rooker-Feldman*'s jurisdictional bar.

### C. Failure to state a claim

The Board defendants contend that plaintiffs fail to state a claim for violation of their equal protection, due process, and First Amendment rights. "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). Rule 8(a) imposes three requirements:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The Court begins with plaintiffs' equal protection claim. To state an equal protection claim under a "class of one" theory, the plaintiffs must allege that they have "'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). No rational basis for differential treatment exists if a defendant acted for "reasons of a personal nature unrelated to the duties of the defendant's position," such as the "desire to find a scapegoat in order to avoid adverse publicity." *Bell v. Duperrault*, 367 F.3d 703, 710 (7th Cir. 2004). Plaintiffs have squarely alleged an equal

protection violation under this theory.

The Supreme Court's decision in *Engquist* does not compel a different result. In that case, the Court identified two exceptions to the class of one theory of equal protection. *See Engquist*, 553 U.S. at 603-05; *Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) (discussing *Engquist*). First, *Engquist* held that "disputes related to a public employee's interactions with superiors or co-workers never may be litigated as class-of-one claims under the equal protection clause." *Avila*, 591 F.3d at 554. Second, it held that "class-of-one claims cannot rest on governmental activity that is discretionary by design," such as prosecutorial charging decisions. *Id.*; *see also Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009) (holding that village's "decision to extend water mains to some communities and not others" was "the exact type of individualized and discretionary decision-making to which the *Engquist* court was referring"). Plaintiffs' claim does not implicate a public employee's interactions with superiors or co-workers. It also does not involve discretionary and intentionally selective governmental activity. Accordingly, *Engquist* does not bar plaintiffs' equal protection claim.

The Court turns next to plaintiffs' due process claim. Plaintiffs assert that both their procedural and substantive due process rights were violated. "To plead a procedural due-process claim, [plaintiffs] must allege a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citation omitted). Plaintiff must also allege "a challenge to the fundamental fairness of the state procedures." *Michalowicz v. Village of Bedford Park*,

528 F.3d 530, 534 (7th Cir. 2008) (citation and internal quotation marks omitted). "In order to prevail on a substantive due process claim involving a deprivation of a property interest, [plaintiffs] must 'show either the inadequacy of state law remedies or an independent constitutional violation.'" *Gable v. City of Chicago*, 296 F.3d 531, 541 (7th Cir. 2002) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)); *see also Palka*, 623 F.3d at 453.

The Board defendants contend that plaintiffs' procedural due process claim fails because plaintiffs do not allege a cognizable property interest or the fundamental unfairness of the state procedures available to them. They argue that plaintiffs' substantive due process claim fails because plaintiffs do not allege either the inadequacy of state law remedies or an independent constitutional violation.

The Court disagrees. First, plaintiffs squarely allege the deprivation without due process of their property interest in a correct property tax assessment. Second, plaintiffs adequately allege both the fundamental unfairness of state procedures and the inadequacy of state law remedies. Plaintiffs allege that the Board adjudicated their tax assessment not on the merits but in retaliation for their association with Froehlich, Am. Compl. ¶¶ 37-52, 54-59; the "PTAB will not render any decision for an unconscionably long time, if ever" because the Board has "red-flagged" their appeal, *id.* ¶¶ 53, 66; and plaintiffs "cannot expect justice in this matter in Circuit Court because there are inherent conflicts of interests between many members of the State judiciary and at least two of the Defendants," *id.* ¶¶ 68-75.

To be sure, defendants counter that the PTAB will not give undue influence to the Board's decision; PTAB procedures will not take a constitutionally inadequate

14

amount of time; and plaintiffs will receive a fair adjudication in state court and can obtain recusal of any state court judge if appropriate. At the motion to dismiss stage, however, the Court accepts the allegations in the complaint as true and considers only whether plaintiffs' allegations are plausible enough to provide sufficient notice to defendants of the plaintiffs' claim. *Brooks*, 578 F.3d at 581. Though plaintiffs' allegations may be quite difficult to prove, that is a matter properly addressed by a motion for summary judgment, not a motion to dismiss for failure to state a claim.

Finally, the Court considers plaintiffs' First Amendment retaliation claim. To prevail on such a claim, a plaintiff "must prove that (1) he engaged in constitutionally protected speech; (2) the defendants, as public officials, engaged in adverse conduct against him; and (3) the defendants were motivated, at least in part, by his protected speech." *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010) (citing *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). A campaign contribution constitutes protected political expression because it expresses support for a particular candidate. *See Buckley v. Valeo*, 424 U.S. 1, 20-21 (1976) (per curiam). The Board defendants contend that plaintiffs do not sufficiently allege the causation element of the claim. Plaintiffs allege, however, that the Board engaged in adverse conduct against them (the rescission of a property tax reduction and the erroneous denial of a later assessment appeal) in retaliation for their associations with and contributions to Froehlich. The Court concludes that plaintiffs have adequately alleged a First Amendment retaliation claim.

D. **Derivative liability**

Defendants argue briefly that plaintiffs' section 1983 claims against the Board are derivative in nature and must be dismissed absent an underlying constitutional violation by the individual defendants. Because plaintiffs have stated an underlying constitutional violation against at least some of the individual Board defendants, this argument fails, even though the individual defendants are immune from individual liability. *See Owen*, 445 U.S. at 638; *Hernandez*, 455 F.3d at 776.

II. **Illinois Review defendants' motion**

The Illinois Review defendants move to dismiss plaintiffs' state law defamation and false light claims on the following grounds: (a) the Court lacks supplemental jurisdiction over the claims because they do not arise from a common nucleus of operative fact as the federal claims against the Board defendants; (b) the Court should decline to exercise supplemental jurisdiction over the state claims because they will require the Court to decide novel issues of state law; and (c) plaintiffs have failed to identify the particular statements they claim were defamatory or placed them in a false light. In their reply brief, the Illinois Review defendants further contend that this Court should dismiss the claims on the basis of a statute of limitations defense.

A. **Common nucleus of operative fact**

The plaintiff has the burden of establishing federal jurisdiction. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). If, as here, a district court has original jurisdiction over an action, the court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Two claims are part of the same case or controversy if they "derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (citation and internal quotation marks omitted). The Illinois Review defendants argue that the operative facts at issue in the state and federal claims are "entirely different" because "there is no suggest [sic] that the Illinois Review Defendants . . . were involved in the Board Defendants' purported actions" rescinding plaintiffs' property tax reduction. Illinois Review Defs.' Mot. to Dismiss at 3

In a previous decision in this case, the Court held that plaintiffs' state law claims against the Fox defendants and plaintiffs' federal claims arise from a common nucleus of operative fact. *See Satkar Hospitality Inc. v. Cook County Bd. of Review*, No. 10 C 6682, 2011 WL 1303227, at *1-2 (N.D. Ill. Apr. 4, 2011). The Court reasoned:

> Satkar alleges that the Board of Review acted in direct response to the stories reported by the media defendants. It is reasonably likely that the Board of Review defendants will cite the information reported by Fox as providing a legitimate basis to reopen the determination of Satkar's assessment. The factual basis for the contentions regarding Satkar's dealings with the state representative is likely to be at issue in the determination of both the constitutional claims against the Board of Review defendants and the claims against the media defendants. It is also likely that the discovery that the parties will conduct regarding Satkar's claims against the Board of Review defendants will overlap significantly with the discovery they will conduct on the defamation and false light claims.

*Id.* at *2. The same analysis applies here. The Court concludes that supplemental jurisdiction exists over the state law claims against the Illinois Review defendants.

### B. Novel issue of state law

A court may decline to exercise supplemental jurisdiction over a claim if, among other things, it "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). "But while a district court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) (citation omitted). "A district court deciding whether to retain jurisdiction pursuant to the factors set forth in § 1367(c) 'should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Defendants contend that adjudication of their statute of limitations defense will require the Court to decide a novel issue of state law. Specifically, they contend that no Illinois state court has yet considered whether, under Illinois' Uniform Single Publication Act, 740 ILCS 165, the limitation period applicable to plaintiffs' claims begins to run on the date of a blog entry's first appearance online or whether its continued availability online restarts the clock. Though the Illinois Appellate Court provided some guidance on proper construction of the Uniform Single Publication Act in *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 859 N.E.2d 1188 (2006), the Illinois Supreme Court has not yet decided this issue.

The Court concludes that, on balance, the values of judicial economy and convenience weigh in favor of this Court retaining jurisdiction over plaintiffs' state law claims. Because the state and federal claims arise from a common factual nucleus,

judicial economy would best be served by deciding all of the claims in this Court. Moreover, the state claims are unlikely to require significantly more factual development than already will be required by the remaining federal claims. *Cf. De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (2003) (reaching a contrary result because the case raised novel state law issues that would require greater factual development than the federal issues and because "the federal action is an appendage to the more comprehensive state action"). For these reasons, the Court declines to dismiss plaintiffs' state law claims against the Illinois Review defendants.

### C. Sufficiency of plaintiffs' allegations

The Illinois Review defendants contend briefly that the Court should dismiss plaintiffs' state law claims pursuant to Rule 12(b)(6) for failure to identify the particular statements that plaintiffs claim were defamatory or placed them in a false light. In support, they incorporate the arguments raised in the Fox defendants' motion to dismiss the first amended complaint. This Court rejected those arguments in a previous decision in this case. *See Satkar Hospitality Inc.*, 2011 WL 1303227, at *6-8. For the same reasons, the Court rejects them here.

### D. Statute of limitations defense

In their reply brief, the Illinois Review defendants assert for the first time a statute of limitations defense to plaintiffs' state law claims. In response, plaintiffs move to strike the defense on the basis of forfeiture.

The Court agrees with plaintiffs that defendants have forfeited the defense for purposes of the motion to dismiss by failing to raise it in their opening brief. "Arguments

19

raised for the first time in a reply brief are waived." *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998); *see also APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (same). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998).

Contrary to defendants' contention, the statute of limitations defense asserted in defendants' reply does not fairly respond to matters raised in the plaintiffs' response. Nor are defendants entitled to assert the defense merely because plaintiffs attached four blog posts containing allegedly defamatory statements to their response brief. Defendants may, however, raise the defense in a motion for summary judgment at a later stage in the case.

## Conclusion

For the reasons stated above, the Court grants the Board defendants' motions to dismiss in part and denies them in part. Specifically, the Court dismisses plaintiffs' claims against the individual Board defendants but otherwise denies the Board defendants' motions to dismiss [docket nos. 31, 70, 72]. The Court denies the Illinois Review defendants' motion to dismiss [docket no. 39]. The case is set for a status hearing on June 2, 2011 at 9:30 a.m.

_____s/ Matthew F. Kennelly_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 20, 2011