IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SATKAR HOSPITALITY INC., SHARAD K. DANI, and HARISH DANI, <br><br> Plaintiffs, <br><br> vs. <br><br> COOK COUNTY BOARD OF REVIEW, FOX TELEVISION STATIONS, INC., FOX CHICAGO NEWS, NEWS CORPORATION, ILLINOIS REVIEW, FRAN EATON, DENNIS G. LACOMB, DANE PLACKO, MARSHA BARTEL, CAROL FOWLER, PATRICK MULLEN, and FOX TELEVISON HOLDINGS, INC., <br><br> Defendants. | Case No. 10 C 6682 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Satkar Hospitality Inc. and its owners, Sharad Dani and Harish Dani (collectively Satkar) have sued the Cook County Board of Review and several of its personnel; the local Fox television station and several affiliates; and the Illinois Review and several affiliates. Satkar contends that the defendants defamed it and placed it in a false light and as a result, the Board revoked a reduction in Satkar's property tax assessment without due process and in violation of other constitutional provisions. The Court has ruled on multiple motions to dismiss filed by the defendants. *See Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, No. 10 C 6682, 2011 WL 2182106 (N.D. Ill. June 2, 2011) (*Satkar III*); *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, No. 10 C 6682, 2011

WL 2011486 (N.D. Ill. May 20, 2011) (*Satkar II*); *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, No. 10 C 6682, 2011 WL 1303227 (N.D. Ill. Apr. 4, 2011) (*Satkar I*). In these decisions, the Court dismissed Satkar's claims against the individual Board defendants but otherwise denied defendants' motions.

The remaining defendants have answered Satkar's complaint. All of the defendants other than the Board have filed motions pursuant to the Illinois Citizen Participation Act (ICPA), 735 ILCS 110/15. Specifically, the Illinois Review, Fran Eaton, and Dennis G. LaComb (the Illinois Review defendants) have filed a "motion to dismiss" Satkar's claims with prejudice. Fox Television Stations, Inc., News Corporation, Dane Placko, Marsha Bartel, Carol Fowler, and Fox Television Holdings, Inc. (the Fox defendants) have filed a "motion for judgment" under the ICPA. The Court considers these motions collectively and, for the reasons stated below, grants them.

## Discussion

The Court assumes familiarity with its May 20, 2011 decision, which provided a detailed summary of Satkar's allegations against defendants. *See Satkar II*, 2011 WL 2011486, at *1-2.

In a previous motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Fox defendants argued that the ICPA immunizes them against liability to Satkar. The Court held that the Fox defendants were not entitled to dismissal under Rule 12(b)(6), but could re-assert their ICPA argument in a procedurally appropriate post-answer motion. *See Satkar III*, 2011 WL 2182106 at *5. The Fox defendants and the Illinois Review defendants have now done so by answering Satkar's complaint and

filing motions for judgment in their favor.  See Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

Motions under Rule 12(c) are analyzed under the same standard that applies to a Rule 12(b)(6) motion.  *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).  The Court takes the facts alleged in the complaint as true, draws all reasonable inferences in favor of Satkar, and will grant the motion unless Satkar's allegations state a plausible claim for relief.  See *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  The Court is limited to considering the pleadings, but in this case the pleadings include the contents of defendants' news reports because the reports are central to Satkar's claims and Satkar referred to them in its complaint.  See *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005).

1.   **Constitutionality of the ICPA**

Satkar first argues that defendants' motions must be denied because the ICPA is unconstitutional on its face and as applied to Satkar's claims.  See Pls.' Resp. at 7-13.  Defendants counter that the Court should reject Satkar's constitutional challenge because Satkar failed to bring it to the attention of the Illinois Attorney General.  See Fox Defs.' Reply at 10.  They also contend that Satkar's arguments fail on their merits.  *See id.* at 10-12; Illinois Review Defs.' Reply at 3-11.

   a.   **Notice**

Under Federal Rule of Civil Procedure 5.1, a party that raises an argument challenging the constitutionality of a state statute must file a notice of constitutional

question and serve it on the state's attorney general.[1] See Fed. R. Civ. P. 5.1(a). The district court must then "certify to the appropriate attorney general that a statute has been questioned." Fed. R. Civ. P. 5.1(b); see also 28 U.S.C. § 2403(b). The state's attorney general may intervene within sixty days after the party files its notice or the district court certifies the challenge, whichever date comes first. Fed. R. Civ. P. 5.1(c). The district court "may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional" until the time to intervene expires. Id.

Satkar does not appear to have notified the Illinois Attorney General of its constitutional challenge to the ICPA as required by Rule 5.1. Pursuant to Rule 5.1(b) and 28 U.S.C. § 2403(b), the Court will issue a separate order certifying to the Illinois Attorney General that Satkar has questioned the constitutionality of the ICPA. As discussed below, however, the Court finds Satkar's arguments to be without merit. The Court will therefore exercise its authority to reject Satkar's constitutional challenge. If the Attorney General chooses to intervene after receiving notice of Satkar's constitutionality challenge, the Court will reconsider its decision.

b. **Merits**

Satkar argues that the ICPA is unconstitutional because (1) it infringes plaintiffs' First Amendment right to petition; (2) it is void for vagueness; and (3) it violates Satkar's right to privacy under the Fourteenth Amendment. Pls.' Resp. at 7-13. The Court

---

[1] Rule 5.1 requires a party to file a notice of constitutional question only if "the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." Fed. R. Civ. P. 5.1(a)(1)(B). The only remaining government defendant in this case is the Cook County Board of Review, a "government office of Cook County." Am. Compl. ¶ 8. Because the Board is not a state agency, Rule 5.1 applies despite the Board's status as a defendant.

4

considers each argument in turn.

### i. The right to petition

Satkar first contends that the ICPA violates the First Amendment because it unconstitutionally limits Satkar's access to the courts. In Satkar's view, "the right of access to a court is too important to be denied due to a statute that purports to protect" defendants "from legitimate defamation claims." *Id.* at 10.

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 741 (1983); *see also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (same). As the Seventh Circuit has acknowledged, this right "constitutes a 'fundamental' right which would, if infringed, demand as justification a compelling state interest." *Bowman v. Niagara Mach. & Tool Works, Inc.*, 832 F.2d 1052, 1054 (7th Cir. 1987).

Satkar's argument lacks merit because the ICPA does not limit Satkar's ability to pursue a cause of action in court. Rather, the statute extends conditional immunity to entities engaged in First Amendment-protected activity. *See* 735 ILCS 110/15. Put simply, the ICPA limits a plaintiff's prospect of success in court, not its access to the courts in the first instance. The Seventh Circuit dealt with a similar argument in *Bowman*, in which the plaintiff argued that Indiana's ten-year statute of repose for products liability claims violated his right of access to the courts. *Bowman*, 832 F.2d at 1054. The court rejected this argument, reasoning that

> the concept of constitutionally protected access to courts revolves around whether an individual is able to make use of the courts' processes to

5

> vindicate *such rights as he may have*, as opposed to the extent to which rights are actually extended to protect or compensate him. Claims of violation of the right of access to courts have thus focused on the availability of suitable court processes to vindicate existing rights or, more commonly, the ability of an individual to make use of those processes. In contrast, Bowman's claim concerns specific substantive rights that the legislature has declined to extend to a group of persons that includes him. Bowman has not alleged that he has been denied access to either state or federal courts to enforce any right that has accrued to him.

*Id.* at 1055 (emphasis in original). Because "the judicial process [wa]s open to" the plaintiff "even if the cause of action he would pursue [wa]s not," the court rejected his right-to-petition argument. *Id.*

Similarly, though the ICPA curtails the substantive viability of causes of action against parties engaged in First Amendment activity, it does not bar Satkar or anyone else from accessing the courts to enforce rights that they possess. Accordingly, the Court concludes that the ICPA does not violate Satkar's First Amendment right to petition the government for redress of grievances.

### ii. Vagueness

Next, Satkar asserts that the ICPA is unconstitutionally vague because its language is "open-ended" and "provides almost no clues as to what is prohibited and what is permitted." Pls.' Resp. at 11. Defendants counter, among other arguments, that the void-for-vagueness doctrine is inapplicable to the ICPA. *See* Fox Defs.' Reply at 12; Illinois Review Defs.' Reply at 7-8.

"[A] penal statute is void for vagueness if it does not define an offense with sufficient clarity to allow people of ordinary intelligence to understand what conduct is prohibited or if it is so vague as to allow for arbitrary or discriminatory enforcement."

6

*United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005) (citing *Kolender v. Lawson*, 461 U.S. 352, 257 (1983)).  The doctrine "has been applied to attacks upon both criminal as well as civil or regulatory statutes," *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1129 (7th Cir. 1984), but it is inapplicable to non-penal statutes. *See, e.g.*, *Glauner v. Miller*, 184 F.3d 1053, 1055 (9th Cir. 1999).

The Court agrees that the void-for-vagueness doctrine is inapplicable in this case because the ICPA is not a penal statute.  To qualify as a "penalty" under Illinois law, a statutory provision must "(1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 13, 919 N.E.2d 300, 307 (2009).  The ICPA does none of these things.  Rather, as noted above, it simply gives rise to a conditional immunity from liability based on certain types of conduct.  Though the statute does provide for the recovery of attorney's fees and costs incurred in seeking dismissal of a purported SLAPP suit, it does not set forth a predetermined amount of fees and costs.  735 ILCS 110/25.  To the contrary, it provides for the recovery of "reasonable" fees and costs and thus implicitly requires a court to consider the degree of "injury" the moving party suffered in seeking dismissal of the SLAPP suit. *Id.*  For these reasons, and because Satkar has cited no authority suggesting that the void-for-vagueness doctrine applies to statutes like the ICPA, the Court rejects Satkar's vagueness argument.

   **iii.  The right to privacy**

Finally, Satkar argues that "[s]uits against private tortfeasors and defamers [are]

7

the sole weapon otherwise powerless parties like [Satkar] have," and "[r]emoving that last line of defense implicates the government in a violation of the [Fourteenth] Amendment right to privacy." Pls.' Resp. at 13.

The Court rejects this argument. Satkar is, of course, correct that the due process clause of the Fourteenth Amendment protects liberty, which the Supreme Court has held includes a right of privacy. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 153 (1973). Satkar cites no cases or other authority, however, plausibly suggesting that this right applies in this context. It appears to argue that the ICPA unconstitutionally limits Satkar's ability to prevail in defamation actions against persons that reveal compromising or embarrassing information about it. *See* Pls.' Resp. at 12-13. This argument lacks merit. Even if the information in defendants' news reports was not publicly available, the Supreme Court "has never held that the disclosure of private information denies due process." *Wolfe v. Schaefer*, 619 F.3d 782, 784-85 (7th Cir. 2010). Although the Seventh Circuit and other courts have "recognize[d] a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information," *id.* at 785, Satkar has not alleged facts suggesting that defendants' conduct resulted in the release of such information. To the contrary, Satkar's core allegation is that defendants reported that a state representative engineered a reduction in Satkar's property tax burden in exchange for campaign contributions. Am. Compl. ¶¶ 26-27. Such information does not constitute highly personal information; indeed, it likely involves matters of public record. For these reasons, and because Satkar cites no cases plausibly supporting its right-to-privacy argument, the argument fails.

## 2. Application of the ICPA

Turning to the merits, the Illinois Review and Fox defendants argue that the ICPA bars Satkar's claims against them. Satkar counters that the ICPA "does not apply to the facts here, and was not intended to protect major media organizations that defame citizens." Pls.' Resp. at 13. Satkar also contends that the ICPA is inapplicable because defendants actions were "not genuinely aimed at procuring favorable government action, result, or outcome." *Id.* at 18-19; 735 ILCS 110/15.

The ICPA applies to "any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." *Id.* It extends immunity for "[a]cts in furtherance of" these rights, "regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." *Id.*

The ICPA requires a court to dismiss claims to which it applies unless the plaintiff produces "clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c). In other words, the ICPA's immunity "will apply where: (1) the defendant's acts were in furtherance of his rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiff's claim is based on, related to, or in response to the defendant's 'acts in furtherance'; and (3) the plaintiff fails to produce clear and convincing evidence that the defendant's acts were not genuinely aimed at procuring favorable government action."

*Sandholm v. Kuecker*, 405 Ill. App. 3d 835, 855, 942 N.E.2d 544, 564 (2010).

The Court has little difficulty in concluding that the first two elements of the test outlined in *Sandholm* are satisfied. Satkar's complaint makes clear that its defamation and false light claims are premised upon the Illinois Review and Fox defendants' news reports. *See, e.g.*, Am. Compl. ¶ 95 ("The statements authored, published and otherwise propagated by the Defendants electronically and by the world-wide web are false and defamatory . . . ."); *id.* ¶ 100 ("Defendants publicized the false statements by means of television, electronically and through broadcast media outlets thereby making publication of them to the public at large"). These reports were directed at the public and addressed possible political corruption, an obvious matter of public concern. Particularly because the Illinois Supreme Court has held that the ICPA "expressly encompasses exercises of political expression directed at the *electorate* as well as government officials," defendants' reports were acts "in furtherance of" their right to speak freely. *Wright Dev. Group, LLC v. Walsh*, 238 Ill. 2d 620, 636, 939 N.E.2d 389, 398 (2010) (emphasis in original).

Satkar argues that the ICPA "was not intended to protect major media organizations that defame citizens." Pls.' Resp. at 13. The plain text of the statute, however, contains no such limitation. To the contrary, section 15 of the ICPA immunizes acts of the "moving party," which section 10 defines as "any person on whose behalf a motion . . . is filed seeking dismissal of a judicial claim." 735 ILCS 110/15, 10. Section 10 further defines "person" as "any individual, corporation, association, organization, partnership, 2 or more persons having a joint or common

10

interest, or other legal entity." 735 ILCS 110/10. Nothing in the ICPA suggests that the statute does not apply to media organizations like the Illinois Review or Fox.

It is also irrelevant that defendants' publication of the reports may have been motivated by profit, a fact which Satkar argues should render the ICPA inapplicable. *See* Pls.' Resp. at 15. As the Supreme Court once said, "[i]f a profit motive could somehow strip communications of the otherwise available constitutional protection," the Court's many pronouncements on the First Amendment "would be little more than empty vessels." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). Satkar also asserts that the ICPA cannot apply if the defendant's statements are false. *See* Pls.' Resp. at 14-15. As the Illinois appellate court has stated, however, the ICPA protects a person's "right to commit libel with impunity" so long as the person does so "with the genuine aim of procuring government action." *See Sandholm*, 405 Ill. App. 3d at 854, 942 N.E.2d at 563. In short, based on the allegations in Satkar's complaint, the Court concludes that Satkar filed its defamation and false light claims against the Illinois Review and Fox defendants in response to these defendants' acts in furtherance of their right to speak freely. *See* 735 ILCS 110/15.

Because the Illinois Review and Fox defendants have satisfied the first two elements of the test from *Sandholm*, the burden of proof under the ICPA shifts to Satkar to provide "clear and convincing evidence that" defendants' actions "are not immunized from, or are not in furtherance of acts immunized from, liability by" the ICPA. 735 ILCS 110/15, 20(c); *see also Walsh*, 238 Ill. 2d at 636, 939 N.E.2d at 398. In this regard, Satkar contends that defendants' actions were not genuinely aimed at procuring

a favorable government outcome.  *See* Pls.' Resp. at 18-19.  Defendants argue, among other things, that their actions in publicizing the alleged corruption scheme were "unmistakably those an objective person could have expected to procure a favorable government outcome," such as an investigation into the Board of Review's appeal process.  Illinois Review Defs.' Opening Br. at 9-10.

To determine whether defendants' actions were genuinely aimed at procuring favorable government action, the Court applies a two-part test derived from the "sham exception" to the so-called *Noerr-Pennington* doctrine.  *See Sandholm*, 405 Ill. App. 3d at 861-62, 942 N.E.2d at 568.  First, the Court must ask "whether objective persons could have reasonably expected to procure a favorable government outcome." *Id.* at 862, 942 N.E.2d at 568.  If the answer to this question is yes, and the ICPA otherwise applies, the defendant's activity is protected.  Id. at 862, 942 N.E.2d at 569.  By contrast, if the answer is no, then the Court must consider "whether defendants' subjective intent was not to achieve a government outcome that may interfere with plaintiff but rather to interfere with plaintiff by using the governmental process itself."  *Id.*

Applying this standard and considering the allegations in Satkar's complaint and the contents of defendants' news reports, the Court concludes that objective persons in defendants' shoes could have reasonably expected to procure a favorable government outcome by publishing the reports.  The defendants published information relating to a matter of significant public concern:  potentially corrupt behavior by a state legislator, a quasi-judicial municipal body, and private entities seeking relief from that body.  The reports published by Illinois Review further reveal that Illinois Review contacted the Inspector General of the Illinois legislature to request that he open an investigation into

12

practices at the Board of Review.  *See* LaComb Decl., Ex. 1 at 25 (July 6, 2009 report stating that "Illinois Review requested an investigation of [Representative] Froehlich be launched" and containing an e-mail response from Inspector General Thomas J. Homer agreeing to open such an investigation).  In addition, Satkar admits that defendants' actions led to further action by the Board of Review.  *See* Am. Compl. ¶ 37 ("In response to the Fox News Report, and the Illinois Review postings, and for the appearance of clean hands, the Board required Plaintiffs to appear and answer questions regarding the relationship between Rep. Froehlich and Plaintiffs.").  Put simply, it would be perfectly reasonable to conclude that, as a result of defendants' reports, government entities might open an investigation into how the Board of Review appeals process worked in Satkar's case.

Satkar nevertheless argues that the ICPA is inapplicable because "[n]o government process was at issue here."  Pls.' Resp. at 18-19.  This argument gives the Court some pause in weighing whether defendants' actions were genuinely aimed at procuring a favorable government outcome.  This Court's respected colleague, Judge Joan Lefkow, accepted a similar argument.  *See Trudeau v. ConsumerAffairs.com, Inc.*, No. 10 C 7193, 2011 WL 3898041, at *6 (N.D. Ill. Sept. 6, 2011) (Lefkow, J.) (concluding in an analogous context that because "[t]here was no use of the governmental process involved in authoring and publishing" a news article, defendant's statements in the article "were not genuinely aimed at procuring favorable government action").  The Illinois Supreme Court, however, has unequivocally stated that the ICPA's immunity is not limited to cases in which the moving party reached out directly to a government entity.  *Walsh*, 238 Ill. 2d at 638, 939 N.E.2d at 399 ("[N]othing in the words

'any act or acts' suggests a requirement of direct appeal to a government official"). In reaching this conclusion, the court reasoned that "the electorate" is included in the definition of "government" in section 10 of the ICPA.[2]  *Id.; see also id.* at 636, 939 N.E.2d at 398 (noting that "the [ICPA] expressly encompasses exercises of political expression directed at the electorate as well as government officials").

In light of *Walsh*, the Court cannot conclude that defendants' actions do not satisfy the objective prong of the modified "sham exception" test from *Sandholm*. An objective person could reasonably expect that following defendants' news reports, the "government" (whether in the form of the Legislative Inspector General, the Board of Review, or the electorate) would call for an investigation into whether the Board's appeals process was tainted by corruption. Therefore, defendants' alleged actions were "genuinely aimed at procuring favorable government action, result, or outcome," and the Court need not consider defendants' subjective intentions. *See Sandholm*, 405 Ill. App. 3d at 862, 942 N.E.2d at 569; 735 ILCS 110/15.

---

[2] The Court doubts that this interpretation is consistent with what the Illinois legislature actually intended in adopting the ICPA. Section 10 of the statute says that "government" includes entities or persons acting under color of law of various public authorities—the United States, individual states, subdivisions of states, or other "public authorit[ies] including the electorate." 735 ILCS 110/10. This likely was not intended to equate the "electorate" with the "government" for purposes of the ICPA but rather to broadly cover governmental entities or public officials or employees acting on *behalf of* the electorate. Despite this, the Court is bound by *Walsh* and cannot substitute its own interpretation of section 10 for that of the Illinois Supreme Court. *See Williams, McCarthy, Kinley, Rudy & Picha v. Nw. Nat'l Ins. Grp.*, 750 F.2d 619, 624 (7th Cir. 1984) ("[T]he Illinois Supreme Court is the final authority on the meaning of Illinois statutes"). Any further modification must come from that court or from the Illinois legislature.

### 3. Summary

Satkar has failed to show that the ICPA is unconstitutional or inapplicable to Satkar's claims against the Illinois Review and Fox defendants. Because Satkar brought these claims in response to these defendants' acts in furtherance of their right of free speech, and because the allegations in Satkar's complaint do not constitute clear and convincing evidence that defendants' actions were not genuinely aimed at procuring favorable government action, the ICPA's immunity bars Satkar's claims against these defendants. The Illinois Review and Fox defendants are entitled to recover reasonable attorney's fees and costs incurred in connection with the present motions. *See* 735 ILCS 110/25.

### Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss and for judgment pursuant to the ICPA [docket nos. 127 & 131]. Counts four and five of plaintiffs' amended complaint are dismissed with prejudice. The Court finds, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay and therefore directs the Clerk to enter final judgment in favor of Fox Television Stations, Inc., Fox Chicago News, News Corporation, Illinois Review, Dane Placko, Fox Television Holdings, Inc., Carol Fowler, Marsha Bartel, Patrick Mullen, Fran Eaton, and Dennis G. Lacomb.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 21, 2011