**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SATKAR HOSPITALITY INC., SHARAD K. DANI, and HARISH DANI,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 10 C 6682** |
| **COOK COUNTY BOARD OF REVIEW,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Satkar Hospitality, Inc., Sharad K. Dani, and Harish Dani have sued the Cook County Board of Review. Plaintiffs claim that the Board revoked their property tax reduction without providing due process and in violation of other constitutional prohibitions. The Board has moved for judgment on the pleadings. For the reasons stated below, the Court denies the motion.

### Background

The present decision assumes familiarity with the Court's previous decisions in this case [docket nos. 98, 114, 118, and 143]. For purposes of resolving a motion for judgment on the pleadings, the Court "view[s] the facts in the complaint in the light most favorable to the nonmoving party." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

The Danis own and operate Satkar, which owns a hotel in Schaumburg, Illinois. Satkar appealed the hotel's 2007 property tax assessment to the Board, which

considers appeals of real estate valuations made by the Cook County Assessor for property tax purposes. The Board lowered the assessment, saving Satkar $40,000 annually in property taxes.

In 2009, the local Fox Television affiliate ran several news stories suggesting that plaintiffs had received the lowered assessment corruptly. The news story stated that plaintiffs had given large campaign contributions to Illinois State Representative Paul Froehlich in exchange for his promise to arrange the lower assessment. Similar stories appeared on the Illinois Review blog. Plaintiffs deny that they ever engaged in corrupt or improper dealings with Froehlich.

Plaintiffs allege that in response to the media reports, the Board required them to appear on June 18, 2009 to discuss their assessment. Instead of asking questions about the assessment or the value of the property, however, plaintiffs allege that the Board only asked questions about their relationship with Froehlich. The Board then rescinded the reduction in property taxes it had awarded shortly before. Plaintiffs allege that the chief deputy commissioner of the Board stated that the reason plaintiffs lost the reduced assessment was because of their relationship with Froehlich and that the new assessment did not reflect the value of the hotel property. Plaintiffs appealed to the Illinois Property Tax Appeal Board (PTAB), but they allege that any review of their case will take many years and will be, in any event, essentially meaningless.

Plaintiffs also allege that they brought another appeal before the Board in 2010, but it was first delayed and then denied. Plaintiffs allege that a commissioner for the Board told their attorney that the second appeal was also denied because of plaintiffs' relationship with Froehlich and not because of the merits of their appeal. The

commissioner also allegedly stated that the Board would not grant any appeal by plaintiffs.

Plaintiffs allege that they do not have any effective means of appeal from the decisions of the Board, because of the significant length of time before any PTAB decision and the fact that the Board has "red-flagged their case with PTAB." Am. Compl. ¶ 53. Plaintiffs acknowledge that they have the right to seek review in the Cook County Circuit Court, but allege that they could not receive any meaningful review there because many of the Circuit Court judges are politically beholden to politically influential members of the Board. The Board does not challenge these allegations for purposes of the present motion.

On October 17, 2010, plaintiffs sued the Board, its three commissioners, and three other employees of the Board for violations of their rights to due process, equal protection, and freedom of speech. They also sued the Fox television station, the Illinois Review, and individuals associated with each for defamation and false light under state law.

On May 20, 2011, the Court dismissed the claims against the Board commissioners and employees, holding that they had absolute quasi-judicial immunity. *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, 819 F. Supp. 2d 727, 732–33 (N.D. Ill. 2011); *see Heyde v. Pittenger*, 633 F.3d 512, 522 (7th Cir. 2011). The Court noted, however, that the Board had not sought to dismiss the claims against it on the grounds of quasi-judicial immunity. *Satkar Hospitality*, 819 F. Supp. 2d at 733. On September 21, 2011, the Court dismissed the claims against Fox, Illinois Review, and the remaining individual defendants, finding that they were barred by the Illinois Citizen

Participation Act. *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, No. 10 C 6682, 2011 WL 4431029, at *8 (N.D. Ill. Sept. 21, 2011). That decision is currently on appeal. The only remaining defendant is the Board.

**Discussion**

When considering a motion for judgment on the pleadings, the Court "view[s] the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore*, 570 F.3d at 827 (internal quotation marks omitted).

The Board contends that it is entitled to judgment on the pleadings for two reasons. First, it claims that, like its commissioners and employees, it is protected by absolute quasi-judicial immunity. Second, the Board claims that it is protected by sovereign immunity as an arm of the State of Illinois.

**A. Quasi-judicial immunity**

The Board contends that it is entitled to quasi-judicial immunity when it is performing judicial functions. In the briefing and at oral argument, neither plaintiffs nor the Board cited any binding case law addressing the application of quasi-judicial immunity to entities. The Board has cited several out-of-circuit cases in which courts have accorded absolute immunity to individuals and entities simultaneously without discussion of any differences. *E.g.*, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 925–26 (9th Cir. 2004); *Brossette v. City of Baton Rouge*, 837 F. Supp. 759, 763 (M.D. La. 1993). In addition, at least two decisions by other judges in this district have held

that entities were absolutely immune because they were performing judicial and prosecutorial functions. *Goluszek v. H.P. Smith Paper Co.*, No. 93 C 5329, 1993 WL 358160, at *2 (N.D. Ill. Sept. 14, 1993); *Jackson v. Illinois Judicial Inquiry Bd.*, No. 93 C 4690, 1993 WL 339292, at *2 (N.D. Ill. Sept. 3, 1993).

After oral argument, however, the Court's research turned up a Seventh Circuit decision in which that court definitively stated that entities are not entitled to quasi-judicial immunity. In *Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006), Hernandez sued the Cook County Sheriff for actions by his deputies. *Id.* at 774. The sheriff attempted to invoke quasi-judicial immunity, because the deputies were carrying out a judge's order to detain Hernandez. *Id.* at 776. The court rejected this argument, stating:

> Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc. *Owen v. City of Independence*, 445 U.S. 622 (1980), holds that governmental bodies whose own policies are unconstitutional cannot obtain a derivative benefit from the qualified immunity that may protect their employees. That decision did not entail a claim of "quasi-judicial immunity," but we cannot see any reason why a governmental entity would be entitled to one kind of immunity but not another.

*Id.* at 776. Although the Seventh Circuit held in favor of the sheriff on other grounds, *id.* at 776–78, the quoted discussion makes clear that entities are not entitled to quasi-judicial immunity. The Court accordingly declines to grant judgment in the Board's favor on this basis.

**B. Eleventh Amendment immunity**

The Board also contends that it is immune from suit because it is a state agency. "The Eleventh Amendment provides states with immunity from suits in federal courts unless the State consents to the suit or Congress has abrogated their immunity. State agencies are treated the same as states for purposes of the Eleventh Amendment." *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citation omitted).

> To determine if a particular entity is a state agency, i.e., an arm of the state, courts look at: (1) the extent of the entity's financial autonomy from the state; and (2) the general legal status of the entity. Of the two, the entity's financial autonomy is the most important factor. In evaluating that factor, we consider the extent of state funding, the state's oversight and control of the entity's fiscal affairs, the entity's ability to raise funds independently, whether the state taxes the entity, and whether a judgment against the entity would result in the state increasing its appropriations to the entity.

*Id.* at 659 (citations and internal quotation marks omitted).

There is nothing to indicate that Illinois has any financial control over the Board. Illinois statutes provide that the commissioners of the Board "shall receive compensation fixed by the county board, which shall be paid from the county treasury." 35 ILCS 200/5-5(c). The same is true for other employees of the Board. 35 ILCS 200/5-15. An Illinois statute also provides that "[t]he county shall provide suitable office space for the board of review." 35 ILCS 200/5-5(c). The Board does not contend that any of its funding comes from Illinois or that Illinois exerts any oversight of control of the Board's funding. Furthermore, nothing in the Board's organizing statute suggests that Illinois funds the Board or would have to allocate more funds to the Board if plaintiffs were to obtain a judgment against the Board. *See Burrus v. State Lottery Comm'n of*

*Ind.*, 546 F.3d 417, 421 (7th Cir. 2008) (primary concern of sovereign immunity is requiring additional appropriations from state, not more indirect effects on state treasury).

Nor does the "general legal status of the entity" suggest that the Board is an arm of the State of Illinois. An Illinois statute created the Board within Cook County. 35 ILCS 200/5-5(c). The Board's three commissioners are elected from districts within the county and serve four-year terms. *Id.*; *see Scott v. O'Grady*, 975 F.2d 366, 370–71 (7th Cir. 1992) (sheriff was usually county official in part because he was elected within the county). The statute does not indicate that anyone but the commissioners has authority to appoint other employees of the Board. 35 ILCS 200/5-15. Although the Cook County Circuit Court, a state court, has authority to appoint someone to fill a vacancy on the Board until the next election, that alone does not mean that the Board is an arm of the state. 35 ILCS 200/5-5(c); *Burrus*, 546 F.3d at 422 (fact that governor appointed commission members permanently did not make commission arm of the state, because "the power to appoint is not the power to control").

Although Illinois statutes impose some procedural requirements upon the Board, such as that taxpayers' assessments cannot be increased without notice and an opportunity to be heard, the Board has full authority to "revise the entire assessment of any taxpayer, or any part thereof, and correct the same as shall appear to the board to be just." 35 ILCS 200/16-120. The Board does not contend that the State of Illinois exerts any control over the methods by which the commissioners make their decisions.

The Board argues that because its decisions are reviewed by the PTAB, a state-wide board whose members are appointed by the governor, or by the state courts, it

must be an arm of the state. 35 ILCS 200/7-5, 16-160. The Board might qualify as an arm of the state when it acts pursuant to an order from the PTAB or the courts. *See Scott*, 975 F.2d at 371. That fact, however, does not mean that the Board is always an arm of the state when performing its ordinary duties. *See id.* (finding that sheriff, when not following orders of state court, was a local official not protected by Eleventh Amendment). Furthermore, the state courts have authority to review decisions from many local governmental bodies; that does not make those bodies state agencies. 735 ILCS 5/3-101, 3-102; *see Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 422, 842 N.E.2d 302, 304 (2005) (state court reviewing decision by Chicago municipal administrative law judge).

The Board contends that it is an arm of the state under the Illinois Constitution because only the Illinois General Assembly has the power to tax, and the Board was created as part of the property tax code pursuant to the General Assembly's power. *See* Ill. Const. art. IX § 1; 35 ILCS 200/5. The Board also notes that "establishment of procedures for the assessment of real estate tax has historically been a matter for the legislature," not local government. *Chicago Bar Ass'n v. County of Cook*, 124 Ill. App. 3d 355, 360, 464 N.E.2d 728, 732 (1984). This argument ignores the fact that the Illinois Constitution provides that the General Assembly's power to raise revenue is exclusive "except as limited or otherwise provided in this Constitution," Ill. Const. art IX § 1, and it expressly gives home rule local governments, including Cook County and many municipalities within Cook County, the power to impose taxes. *Id.* art VII § 6(a); *Chicago Bar Ass'n v. County of Cook*, 102 Ill. 2d 438, 441, 467 N.E.2d 580, 581 (1984)

(in 1984, Cook County contained 570 taxing bodies and 44 home rule entities).

More importantly, whether an entity is an arm of the state does not depend on "whose law supplies the substantive rule." *Mercado v. Dart*, 604 F.3d 360, 366 (7th Cir. 2010). "That some rules for conduct of [the Board] are set by a state does not make [the Board] 'the state' for the purpose of § 1983, the eleventh amendment, or doctrines of sovereign immunity." *Id.* Even when a local entity is subject to the dictates of state law in an area, it is not an arm of the state when it exercises discretion in fulfilling those dictates. *See Richman v. Sheahan*, 270 F.3d 430, 440 (7th Cir. 2001) (sheriff's obligation to arrest someone when ordered by state court did not immunize sheriff from suit claiming inadequate supervision and training of deputies when arresting someone); *Ruehman v. Sheahan*, 34 F.3d 525, 529–30 (7th Cir. 1994) (sheriff's obligation to obey state court orders and warrants did not mean that his decision to use a computerized warrant tracking system was protected by sovereign immunity).

The Board also contends that it is an arm of the state because Cook County has essentially no authority over it. In 1984, the Illinois Supreme Court held that Cook County had no power to alter the number of members on the Board of Appeals (the predecessor to the current Board of Review) or their elected terms. 35 ILCS 200/5-5(a); *Chicago Bar. Ass'n*, 102 Ill. 2d at 440–42, 467 N.E.2d at 581–82. The court held that such alterations of the Board were unconstitutional, because they did not come within the county's home rule powers or its ability to provide for the election of additional county officials. *Id.* The court focused on the fact that there were numerous other taxing bodies in Cook County, all of which had an interest in the taxes generated from

the assessments the Board of Appeals reviewed. *Id.* at 441, 467 N.E.2d at 581. The Board's argument, however, ignores the fact that Cook County sets and pays the wages for commissioners and employees of the Board and that the State of Illinois appears to have no fiscal connection to the Board.

Furthermore, the Board's argument amounts to a contention that because the Board is not part of Cook County, it must be an arm of the State of Illinois. "This argument overlooks a crucial third possibility," that the Board is a local government entity largely independent of the county but not an arm of the state. *Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) (fact that county did not exercise much control over sheriff and was not responsible for sheriff under doctrine of *respondeat superior* did not mean that sheriff was an arm of the state); *accord DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976–77 (7th Cir. 2000). The fact that Cook County cannot control the Board "does not necessarily entail that the [Board] must necessarily be an agent of the state." *Frankllin*, 150 F.3d at 686. Furthermore, the Illinois Supreme Court's decision does not suggest that the Board is an agency of the state, but only that the Board serves all of the taxing bodies in Cook County and not just the county itself. *Chicago Bar Ass'n*, 102 Ill. 2d at 441–42, 467 N.E.2d at 581–82; *cf. Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994) (granting state prosecutor sovereign immunity when Illinois Supreme Court had said that prosecutors are state officials).

In sum, the Court concludes that the Board is not an arm of the State of Illinois entitled to immunity under the Eleventh Amendment and therefore declines to grant judgment on that ground. *See Santana v. Cook County Bd. of Review*, 700 F. Supp. 2d

1023, 1030 (N.D. Ill. 2010) (refusing to hold that the Board was an arm of the state because state law referred to it as a county agency, commissioners had to reside in county, and county fixed and paid commissioner salaries).

## Conclusion

For the reasons stated above, the Court denies defendant's motion for judgment on the pleadings [docket no. 188]. The case is set for a status hearing on August 9, 2012 at 8:30 a.m. to address the Board's pending motion for protective order.

MATTHEW F. KENNELLY
United States District Judge

Date: August 2, 2012